UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

CASE NO.: 8:14-cr-394-T-24AEP

vs.

OSCAR RAFAEL GUARDIOLA-CASTILLO,
JAVIER ENRIQUE CARDENAS-SOCARRAS,
JUAN CARRASQUILLA-LOMBADA, HEBER
AUGUSTO SANCHEZ-CORTES, ANDRES
RAMON FONTALVO-MARTINEZ,
WILLINGTON BARONA-BRAVO, EDUARDO
EMILIO ORTIZ-CERVANTES, ROGER
TEJADA-PIEDRAHITA, VICTOR OTERO-
POMARES, JACINTO TORRES, YENSI MANUEL
MEDRANO-BLANQUICETH, RAFAEL
ANTONIO PATINO-VILLALOBOS,
MANUEL ESTEBAN MELENDEZ.
_____/

**ORDER**

This cause comes before the Court on Defendant Manuel Esteban Melendez-Blanco's Motion in Limine Regarding Ion Scan Results and Derivative Evidence and/or Requesting a Pretrial *Daubert* Hearing (Dkt. 128). Defendants Oscar Rafael Guardiola-Castillo, Javier Enrique Cardenas-Socarras, Juan Carrasquilla-Lombada, Heber Augusto Sanchez-Cortes, Willington Barona-Bravo, Eduardo Emilio Ortiz-Cervantes, Roger Tejada-Piedrahita, Victor Otero-Pomares, Jacinto Torres, and Rafael Antonio Patino-Villalobos, have all joined in the motion. Dkts. 142, 143, 145, 146, 147, 148, 150, 152, 155. For the reasons stated below, the Court **GRANTS** the motion to the extent it requests a *Daubert* hearing and disclosure by the government of its Rule 16 materials, and **DENIES** the motion to the extent it seeks to exclude evidence and testimony related to the ion scan technology, testing, and test results.

Upon receipt of Defendants' motion, the Court entered an order requiring the government to disclose to the defendants a written expert summary pursuant to the pre-trial discovery order (Dkt. 46) and Federal Rule of Criminal Procedure 16(a)(1)(G).  Dkt. 154.  The government complied with the Court's order.  On February 18, 2015, the Court held a hearing on the motion.  Dkt. 163.  At the hearing, the government's expert, United States Coast Guard Maritime Enforcer Senior Chief Gustavo L. Tirado, testified and was cross-examined.

I.  **BACKGROUND.**

On or about September 7, 2014, the United States Coast Guard intercepted and searched the Motor Vessel Borocho (the "Borocho"), in international waters off the coast of Columbia.  Dkt. 128 at 5; Dkt. 176 at 1.  The Coast Guard boarding team conducted an initial safety sweep and, on September 8, 2014, began ion scan testing of the Borocho and its crew members.  The boarding team located a total of 719 kilograms of cocaine hidden in the lube oil tank and in one of the cargo hold ballast tanks on the Borocho.  Dkt. 176 at 3-4.

The Indictment in this case charges the defendants with (1) knowingly and willfully combining, conspiring and agreeing with each other to possess with the intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. § 70503(a) and § 70506(a) and (b), and 21 U.S.C. § 960(b)(1)(B)(ii), and (2) knowingly and intentionally, while aiding and abetting each other, possession with the intent to distribute five kilograms or more of cocaine in violation of 46 U.S.C. § 70503(a) and § 70506(a), 18 U.S.C. § 2, and 21 U.S.C. § 960(b)(1)(B)(ii).

In discovery, the government has provided evidence of ion scan tests and their results to Defendants.  Dkt. 128 at 1.  The government intends to present this evidence at trial.

In their motion, Defendants assert that the government's failure to meet the requirements of Fed. R. Crim. P. 16(a)(1)(G), the *Daubert*/Fed. R. Evid. 702 review, and the review employed by Fed. R. Evid. 403 should cause the Court to grant the motion in limine and exclude the government's evidence regarding the ion scan testing and test results, including testimony regarding the same. In addition, Defendants move to have the Court order the government to provide Defendants with all Fed. R. Crim. P. 16(a)(1)(G) material. The Court will address each argument, and those raised at the hearing, in turn.

## II. DISCLOSURE PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 16(A)(1)(G).

Rule 16 of the Federal Rules of Criminal Procedure addresses the parties' obligations regarding expert witnesses. As to the government's obligation, it provides that "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(G). Here, Defendants' motion includes a request for the Rule 16 material. As stated above, upon receipt of the motion in limine, the Court entered an order requiring the government to furnish an expert summary pursuant to the pre-trial discovery order entered in this case and Fed. R. Crim. P. 16(a)(1)(G). Dkt. 154. The government provided Defendants with a curriculum vitae of its expert Coast Guard witness, Gustavo L. Tirado, a summary of his proposed testimony, and the test results the witness relied upon in forming his opinion. The Court finds that the government has fulfilled its obligations under Rule 16. As such, there is no basis under Rule 16 to exclude the ion scan evidence at trial.

### III. DAUBERT AND RULE 702 LEGAL STANDARD.

This Court performs "a gatekeeping role" regarding admissibility of expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). Under Federal Rule of Evidence 702:

> [i]f scientific . . . knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The proponent of the expert testimony has the burden of showing, by a preponderance of the evidence, that the testimony satisfies each of the following prongs:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Hendrix ex rel G.P. v. Evenflo Co.*, 609 F.3d 1183, 1994 (11th Cir. 2010).

#### A. Senior Chief Tirado's Qualifications as an Expert.

Senior Chief Tirado is a twenty-four year veteran of the Coast Guard. He is the current training department chief in the USCG Tactical Law Enforcement Team South located in Opa Locka, Florida. In his current position, Senior Chief Tirado ensures law enforcement training is conducted in accordance with established policy and procedures. Since 1999, he has been a certified ion scan operator. He has conducted thousands of ion scan samples both in the field and in the classroom. Since 2006, Senior Chief Tirado has also served as an ion scan instructor and has trained hundreds of Coast Guard operators on the proper operating procedure of the ion scan

400B and ion sample collection. He has received training by the manufacturer of the ion scan 400B, Smits Detection, and continues to participate in yearly recertification courses for the ion scan 400B.

There has been no argument by Defendants that Senior Chief Tirado is not qualified to testify competently regarding the matters he intends to address, which include the ion scan technology and his opinion on the test results taken from the Borocho vessel and crew. The Court notes that Senior Chief Tirado did not participate in the ion scan testing upon the Borocho and that his opinion regarding the cocaine residue found on the Borocho and most of its crew members is based on the documents containing the test results. The Court finds that Senior Chief Tirado is qualified to give his opinion regarding the ion scan testing and results based on his experience in ion scan testing, analysis, and training.

### B. Methodology is Sufficiently Reliable.

Senior Chief Tirado testified that the Coast Guard regularly uses the ion scan testing in detecting trace amounts of narcotics on vessels at sea. He testified that the technology is often relied on by the Coast Guard and the results of the ion scan testing are highly reliable and precise.

Although there is not an abundance of case law involving ion scan technology, courts have noted that the "devices have been widely used", and "in a variety of law enforcement settings." *Braun v. Maynard*, 652 F.3d 557, 561 (4th Cir. 2011) (quotations omitted). In *United States v. Hernandez-De La Rosa*, 606 F. Supp. 2d 175, 187-88 (D. P.R. 2009), the District Court of Puerto Rico found the ion scan technology was sufficiently reliable and met the *Daubert* standard for reliability. The Court finds that the ion scan technology is sufficiently reliable under *Daubert*.

5

### C. Whether the Ion Scan Testimony Assists the Trier of Fact.

Defendants challenge whether the ion scan testimony will assist the jury in determining a fact in issue. In this case, the relevant issue is whether the defendants knowingly and willfully conspired to possess with the intent to distribute cocaine and knowingly and intentionally possessed with the intention to distribute cocaine. Defendants argue that the ion scan results offer no valid scientific connection to the issue of their involvement in the alleged crimes and that the evidence is not helpful and should be inadmissible. Dkt. 128 at 11. The Court need only find that the testimony and evidence regarding the ion scan technology assist the jury by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n. 10.

The ion scans, as interpreted by Senior Chief Tirado, show that cocaine residue was found on samples taken from most of the defendants. The alarm on the 400B ion scan machine sounded for twelve of the thirteen crew members. He explained how the tests results are interpreted, including the three measurements the ion scan machine produces: amplitude, delta, and number of segments.[1] All three measurements are used in the determination of whether a sample tests positive for narcotics residue. With respect to the Borocho, Senior Chief Tirado testified that he concluded from the ion scan results that cocaine had been on board the ship. The Court finds that this testimony is sufficient to link the evidence with the facts at issue in this case. Because the ion scan technology is able to detect the presence of illegal drugs and analyze the relative quantity of such drugs, this piece of evidence will assist the trier of fact to determine a fact in issue.

---

[1] The Coast Guard has established values for each measurement which must be met in order to positively identify a sample as having cocaine traces. The manufacturer has a less precise value for the delta (50 vs. 30 for the USCG) measurement under which it identifies a positive cocaine sample. In this case, six of the twelve crew members that the Coast Guard identified as having a positive ion scan had delta values greater than 30 (but less than 50). This goes to the weight of the evidence and not the admissibility and is appropriate for cross-examination.

**IV.    FEDERAL RULE OF EVIDENCE 403.**

Defendants assert that even if the expert testimony is relevant and reliable, the evidence should be excluded because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Defendants argue that the ion scan evidence "has little or no probative value." Dkt. 128 at 13. In support of this assertion, Defendants advanced a number of arguments, all of which the Court finds go to the weight of the evidence and not the admissibility. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

The following arguments have been advanced by the defendants:

(1) The fact that cocaine residue can remain in place for a substantial period of time, and, relatedly, the argument that the ion scan results cannot identify whether the crew members were contaminated with cocaine that was already present on the Borocho. This goes to the weight of the evidence and may be addressed on cross-examination.

(2) Similarly, the ion scan results cannot show how the crew members came into contact with the cocaine that was found on the swipes of their persons. This goes to the weight of the evidence and not the admissibility and may be addressed on cross-examination.

(3) The log activity for the ion scan testing done on the Borocho and its crew members does not indicate that a blank sample was run to "clear out" the machine in order to ensure that any cocaine from the previous positive test no longer remains. Chief Officer Tirado testified that if the ion scan machine was not cleared out after every positive test, the test

      results may be unreliable.  As to this argument, the government indicates that it will provide testimony that the ion scan machine was cleared out, but that the machine operators failed to log those tests.  Therefore, this goes to the weight of the evidence and not its admissibility and may be addressed on cross-examination.

(4)    Whether the ion scan machine was properly calibrated and cleared out over the multiple days of ion scan tests performed on the Borocho and its crew members.  Again, the log books do not indicate that the machine was calibrated and cleared out each day but the government indicates that it will provide testimony that these preliminary procedures were performed but not logged.  Thus, this goes to the weight of the evidence and not the admissibility and may be addressed on cross-examination.

(5)    Relatedly, whether the Coast Guard boarding team were swabbed and subject to ion scan testing each time they returned to the Borocho.  The log books do not indicate that such testing took place, but the government indicates that it will provide testimony that such testing was performed but not logged.  This too goes to the weight of the evidence and not the admissibility and may be the subject of cross-examination.

(6)    As noted above, the defendants' argument that the Coast Guard standard for the delta measurement is different than the manufacturer's standard, which is less stringent.  Those defendants that had delta readings above the Coast Guard standard of 30 but within the manufacturer's standard of 50 may address that argument on cross-examination as it goes to the weight of the evidence and not its admissibility.

In summary, the Court finds that the probative value of the ion scan evidence is not substantially outweighed by the danger of unfair prejudice and it is admissible. Defendants may properly address their arguments on cross-examination.

**V. CONCLUSION.**

Based on the foregoing, the motion in limine is GRANTED to the extent that the Court conducted a *Daubert* hearing and the government complied with its obligations under Fed. R. Crim. P. 16, but is otherwise DENIED. The proffered testimony and evidence regarding the ion scan technology, testing and results is admissible at trial.

Finally, at the hearing, Defendants indicated that they may call an expert witness, Janine S. Arvizu, CQA, at trial regarding the ion scan technology. They are reminded to comply with the provisions of Federal Rule of Criminal Procedure 16(b)(1)(C).

**DONE AND ORDERED** at Tampa, Florida, this 20th day of February, 2015.

SUSAN C. BUCKLEW
United States District Judge

Copies To:
Counsel of record